IN THE IOWA DISTRICT COURT IN AND FOR POLK COUNTY

HAMAD HAMAD,

                Plaintiff,

vs.

AMAZON.COM, INC.,

                Defendant.

Court File No.: 05771 LACL161449

## NOTICE OF FILING NOTICE OF REMOVAL

TO:    CLERK OF THE COURT, IOWA DISTRICT COURT FOR POLK COUNTY

PLEASE TAKE NOTICE that on March 17, 2025, Defendant Amazon.com Services LLC[1]

filed with the United States District Court for the Southern District of Iowa, Central Division, its

Notice of Removal, a copy of which is attached to this Notice of Filing.

Dated:  March 17, 2025

*/s/ Emily A. McNee*

Emily A. McNee, Bar No. AT0014350
emcnee@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402.2136
Telephone:  612.630.1000
Facsimile:   612.630.9626

Attorneys for Defendant AMAZON.COM,
INC.

---

[1] Misidentified in the Complaint as "Amazon.com, Inc."

Proof of Service

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on March 17, 2025 by:

☐ Hand Delivered      ☒ United States mail
☐ Federal Express     ☒ Other (CM/ECF)

Signature: /s/   *Emily A. McNee*

4938-3307-1392 / 114766.1257

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

HAMAD HAMAD,

Plaintiff,

v.

AMAZON.COM, INC.,

Defendant.

Court File No.

**NOTICE OF REMOVAL**

TO:    THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION

Pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441 and 1446, Defendant Amazon.com Services LLC ("Defendant")[1] hereby gives notice of removal of the above-captioned action currently pending in the Polk County District Court, State of Iowa, to the United States District Court for the Southern District of Iowa.  In support of its Notice of Removal, Defendant states as follows:

1.    On or about January 27, 2025, Plaintiff Hamad Hamad ("Plaintiff"), commenced a civil action against Defendant in the Polk County District Court in the State of Iowa, by service pursuant to Iowa Rule of Civil Procedure 1.301.  A true and correct copy of the Summons and Petition is attached as Exhibit A.

2.    Plaintiff claims religious discrimination, failure to accommodate, and retaliation in violation of the Iowa Civil Rights Act and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*  *See* Ex. A, Petition.

3.    ***Federal Question Jurisdiction Basis for Removal:***  This Court has subject matter jurisdiction based upon federal question jurisdiction because Plaintiff's Petition alleges claims for

---

[1] Plaintiff misidentifies his employer as "Amazon.com, Inc." The correct entity is Amazon.com Services LLC.

violation of Title VII, making this a "civil action[] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

4.     ***Supplemental Jurisdiction:***  This Court also has supplemental jurisdiction over Plaintiff's identical claims arising under state law. Because these claims rest on the exact same facts and occurrences as Plaintiff's Title VII claims, they are thus "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" between the parties.  28 U.S.C. § 1367(a).

5.     ***Diversity Jurisdiction Basis for Removal:***  This case is also a civil action over which the Court has original jurisdiction under 28 U.S.C. § 1332 and is one that Defendant may remove to the Court pursuant to 28 U.S.C. §§ 1441 and 1446, in that Plaintiff in this action is diverse in citizenship from Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

6.     ***Citizenship of Parties:***  Plaintiff is a resident of the State of Iowa. *See* Exhibit A, Petition ¶ 2. For diversity purposes, an individual is a citizen of the state in which he or she is domiciled with the intent to remain. *See Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1085 (8th Cir. 2017). To be domiciled in a state, a person must reside there and intend to remain indefinitely. *See Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). A person may only have one domicile and may be a citizen of only one state for diversity jurisdiction purposes. *See Williamson v. Osenton*, 232 U.S. 619, 625 (1914). To be domiciled in a state, a person must reside there and intend to remain indefinitely. *See Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). A person may only have one domicile and may be a citizen of only one state for diversity jurisdiction purposes. *See Williamson v. Osenton*, 232 U.S. 619, 625 (1914). Upon information and belief, Plaintiff was a citizen and resident of the State of Iowa at the time of the commencement of this

action and is now a citizen and resident of the State of Iowa. (*See* Exhibit A at ¶ 2.) Upon information and belief, Plaintiff continues to reside in Polk County and intends to continue to make Iowa his primary residence for the indefinite future. Therefore, Plaintiff is a citizen of Iowa for purposes of 28 U.S.C. § 1332.

7.      Plaintiff's employer is misidentified in the Petition as Defendant "Amazon.com, Inc." Nevertheless, Amazon.com, Inc. is an existing corporation formed under the laws of the State of Delaware, with its principal place of business in the State of Washington. It is therefore a citizen of Delaware and Washington. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").

8.      Amazon.com Services LLC, the correctly named Defendant, is a limited liability company, meaning its citizenship is that of its members. *See GMAC Com. Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). Amazon.com Services LLC's sole member is Amazon.com Sales, Inc.

9.      Amazon.com Sales Inc. is a corporation incorporated in Delaware, with its principal place of business in Washington. Accordingly, Amazon.com Services LLC, through the citizenship of its member, is a citizen of Delaware and Washington.

10.      Plaintiff is, therefore, diverse in citizenship from Defendant, whether correctly or incorrectly named, so as to vest removal jurisdiction in this Court.

11.      ***Amount in Controversy:*** This is a civil action wherein the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. Plaintiff expressly seeks recovery of lost wages, mental and emotional distress, future earnings, punitive damages, and attorney fees. *See* Ex. A, Petition ¶¶ 64, 75, 91, 100, 112, 129, and "Wherefore" paragraphs.

12.     For the purposes of the amount in controversy, Plaintiff's lost wages are calculated from the date of termination through trial. *See Salazar v. Tyson Foods, Inc.*, 985 F. Supp. 2d 996, 1000 (S.D. Iowa 2013) (calculating potential lost wages through trial). Plaintiff alleges his employment was terminated on October 24, 2023. *See* Ex. A, Petition ¶ 55. Plaintiff earned approximately $2,625.80/month at the time his employment was terminated, making his lost wages through the time he filed his Petition approximately $39,387.[2] The average time from initial filing through resolution at trial in this Circuit is 28.8 months,[3] making Plaintiff's potential lost wages from the date he filed his Petition through resolution at trial approximately $75,600.[4] The amount in controversy from Plaintiff's potential lost wages are thus $114,987.

13.     Considering Plaintiff's monetary claims combined with his clear statement that he is seeking recovery of mental and emotional distress, punitive damages, and attorney fees, this is the type of case wherein the damages sought may reasonably exceed $75,000, such that Defendant may properly remove this action notwithstanding Plaintiff's failure to precisely state an amount of damages exceeding the requisite amount in controversy. *See Berg v. INTL FC Stone, Inc.*, No. 418CV00465RGEHCA, 2019 WL 13301269, at *3 (S.D. Iowa Feb. 6, 2019) (emotional distress); *Allison v. Sec. Ben. Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992) (punitive damages); *Crawford v. F. Hoffman La Roche*, 267 F.3d 760, 766 (8th Cir. 2001) (citing *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)) (attorney's fees). Although Defendant denies the validity and merit of Plaintiff's claims and denies that he is entitled to any relief sought, his claim for

---

[2] $2,625.80 x 15 months.

[3] There is no specific data available for this District. *See* United States Courts Table C-5 ending September 30, 2024, available at: https://www.uscourts.gov/sites/default/files/2024-12/jb_c5_0930.2024.pdf

[4] $2,625.80 x 28.8 months.

damages in the aggregate amount to a claim for over $75,000 and thus, exceed the requisite amount in controversy and Defendant may remove this action. *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002) ("The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000.").

14.     ***Timing of Removal:***  This Notice of Removal is filed within thirty (30) days of Defendant's receipt of the original Petition and thus is timely under 28 U.S.C. § 1446(b).

15.     ***Venue is Proper:*** Venue is proper in this Court pursuant to 28 U.S.C. §§ 95(b)(1), 1391, and 1441, because it is the federal judicial district embracing the original court of filing (i.e., Polk County District Court), as well as where a substantial part of the alleged events giving rise to Plaintiff's claims are alleged to have occurred and because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

16.     Simultaneous with the filing of this Notice of Removal, Defendant has notified the Polk County District Court in the State of Iowa of removal of this action.

17.     Pursuant to Local Rule 81(a)(1), and 28 U.S.C. § 1446, as of the date of filing this Notice of Removal, no other pleadings or orders other than the Petition attached in Exhibit A have been filed in the State Court Action.

18.     Pursuant to Local Rule 81(a)(2), as of the date of filing this Notice of Removal, the only matters that are pending in the Iowa District Court for Polk County that require resolution are the issues raised in Plaintiff's Petition, which as of the time of filing this Notice of Removal have not yet been answered.

19.     True and correct copies of the Notice of Removal (with accompanying Exhibits) and the Notice of Filing of Notice of Removal directed to State Court will be served upon

Plaintiff's counsel and filed with the Court Administrator of the Polk County District Court in the State of Iowa on this date, in accordance with the provisions of 28 U.S.C. § 1446(d).

20.    Attorney Emily McNee represents Defendant. Attorneys Thomas J. Freeman and Amy Beck have appeared in this case in the State Court Action for Plaintiff and their contact information as required under Local Rule 81(a)(3) is:

Emily A. McNee, Bar No. AT0014350
emcnee@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center
80 S. 8th Street
Minneapolis, MN 55402.2136
Telephone:    612.630.1000
Facsimile:    612.630.9626

Thomas J. Freeman, Bar No. AT0016040
tom@employmentlawiowa.com
Amy Beck, Bar No. AT0013022
amy@employmentlawiowa.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone:    515.254.1999
Facsimile:    515.254.9923

By removing this action, Defendant does not waive any defenses, objections, or motions available to it under state or federal law.

WHEREFORE, Defendant respectfully requests that this action, now pending in the District Court for the County of Polk, Iowa, be removed to the United States District Court for the Southern District of Iowa.

Dated:  March 17, 2025

*/s/ Emily A. McNee*
Emily A. McNee, Bar No. AT0014350
emcnee@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402.2136
Telephone:    612.630.1000
Facsimile:    612.630.9626

Attorneys for Defendant AMAZON.COM, INC.

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on March 17, 2025 by:

☐ Hand Delivered     X United States mail
☐ Federal Express     X Other (CM/ECF)

Signature: /s/ *Emil A. McNee*

EXHIBIT A

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| HAMAD HAMAD, | Case No. |
| Plaintiff, | |
| vs. | |
| AMAZON.COM, INC., | **PETITION AND JURY DEMAND** |
| Defendant. | |

**COMES NOW** Plaintiff Hamad Salih Ali Hamad and for his cause of action states the following:

## INTRODUCTION

1.      This is a civil action seeking damages for Defendant's illegal religious discrimination and retaliation in violation of the Iowa Civil Rights Act ("ICRA") and Title VII of the Civil Rights Act of 1964 ("Title VII").

2.      Plaintiff Hamad Hamad is a resident of Polk County, Iowa.

3.      Defendant Amazon.com, Inc. is a foreign corporation incorporated or organized in Delaware with their principal place of business in Washington.

4.      The acts of which Plaintiff complains occurred in Polk County, Iowa.

## PROCEDURAL REQUIREMENTS

5.      On February 23, 2024, within 300 days of the acts of which he complains, Hamad filed charges of employment discrimination with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission.

6.      On October 30, 2024, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a right to sue letter with respect to Hamad's charges of discrimination.

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

## JURISDICTIONAL REQUIREMENTS

7.      This Court has personal jurisdiction over Defendant, which maintains a facility employs employees, and regularly conducts business in Polk County, Iowa.

8.      This Court has subject matter jurisdiction over the claims alleged in this Petition.

9.      Venue is proper in this Court, as the acts of which Plaintiff complains occurred in Polk County, Iowa.

## FACTUAL BACKGROUND

10.     Plaintiff Hamad Hamad ("Hamad") came to the United States as a refugee from Sudan.

11.     Hamad is black.

12.     Hamad is also a devout Muslim.

13.     Daily ritual prayers, called salat, are an important part of the Islamic religion.

14.     On Fridays, Muslim men are required to engage in communal prayer called Salat al-Jumu'ah.

15.     Salat and Salat al-Jumu'ah are important religious practices for male Muslims and integral to their understanding of their religious obligations.

16.     In March 2020, Defendant hired Hamad as a Sortation Associate at its location in Grimes, Iowa.

17.     While working at Defendant's Grimes location, Hamad went to mosque on Fridays (Salat al-Jumu'ah) and engaged in daily prayer (salat) without issue.

18.     On April 13, 2023, Hamad accepted an offer from Defendant to transfer to the Bondurant, Iowa location and become a transportation associate.

19.     Hamad started his new position on April 16, 2023.

2

20.     Team Manager Scott Hillier was Hamad's new supervisor at the Bondurant location.

21.     Hamad was trained as a Hostler driver from May 1-4, 2023.

22.     Defendant scheduled Hamad to work each Friday at the Bondurant location.

### HAMAD'S FIRST REQUEST FOR A RELIGIOUS ACCOMMODATION

23.     Hamad immediately asked Hillier to switch his Friday shifts to another day during the week to accommodate his trips to the mosque for Salat al-Jumu'ah.

24.     Hillier refused to switch Hamad's shifts and instructed Hamad to speak with Human Resources.

### HAMAD'S SECOND REQUEST FOR A RELIGIOUS ACCOMMODATION

25.     In May of 2023, Hamad submitted a request to Human Resources to change his schedule so he would not be scheduled to work on Fridays, so he could attend Salat al-Jumu'ah.

26.     Human Resources approved Hamad's request for a schedule change almost immediately.

27.     Hillier became angry, refused to honor Human Resources' decision, and demanded Hamad submit a second request to Human Resources for a schedule change.

### HAMAD'S THIRD REQUEST FOR A RELIGIOUS ACCOMMODATION

28.     On June 14, 2023, Hamad submitted a request to Human Resources on "My HR Live Support."

29.     This time, Human Resources forced Hamad to wait two weeks in limbo, ultimately denying his request for a schedule change and claiming the request contradicted company policy.

30.     The recap of this request stated that the specialist reviewed Hamad's request, but he is "not getting that option." Defendant told Hamad to contact Local Human Resources and fill out a form for any further assistance.

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

31.     Hamad began using his Paid Time Off ("PTO") and Vacation Time to attend Salat al-Jumu'ah on Fridays because his requests to various human resource offices were denied.

32.     Hillier approved Hamad's vacation time and Human Resources approved his PTO, which Hamad took every Friday.

33.     On June 22, 2023, while at a different worksite, Hamad noticed an operating light in his trailer cab was red.

34.     The worksite manager told Hamad the mistake was minor and instructed Hamad to return to the Bondurant location to receive additional training on properly connecting the trailer and cab.

35.     Defendant routinely retrains its drivers when incidents like this occur.

36.     On June 27, 2023, five days later, Hamad was given his first written warning from Hillier instead of receiving retraining.

37.     The written warning was the first one Hamad had received while employed with Defendant.

38.     Hamad never had any performance-related issues prior to being supervised by Hillier and requesting an accommodation for his religious beliefs.

39.     Hamad was not retrained until weeks later on July 16-18, 2023.

**HAMAD'S FOURTH REQUEST FOR A RELIGIOUS ACCOMMODATION**

40.     On June 29, 2023, Hamad submitted another request to Local Human Resources, asking for an accommodation that would allow him to attend mosque on Fridays.

41.     Local Human Resources stated that this request was outside of their scope.

42.     Local Human Resources instructed Hamad to go through "Transportation Operations Management Human Resources and Centralized Timekeeping" because they handle

E-FILED 2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

"religious based schedule change requests." Hamad's description contained only, "religious reason prayer in mosque," which was deemed an insufficient description by Defendant.

## HAMAD'S FIFTH REQUEST FOR A RELIGIOUS ACCOMMODATION

43.     On July 20, 2023, Hamad submitted another request for accommodations to the "proper" human resources.

44.     This request was deemed "improper" and denied by Transportation Operations Management Human Resources and Central Timekeeping, allegedly due to lack of supporting documentation.

45.     Defendant provided no further information to Hamad about the type(s) of documentation it required for such a request.

46.     On August 29, 2023, Hillier issued Hamad a "Final Written Warning," claiming Hamad opened and entered a trailer in the yard that was not docked on August 3.

47.     A "Final Written Warning" serves as a final warning prior to termination. If an employee commits an infraction within 90 days of the warning, they will be terminated.

48.     Defendant did not explain to Hamad why the warning for a "severe safety infraction" was given twenty-six days after the date of the alleged infraction.

49.     On October 6, 2023, Hamad self-reported that he forgot to inspect his trailer.

50.     Hillier reminded Hamad of the rules pertaining to trailer inspections, but he chose not to discipline Hamad.

51.     On October 15, 2023, Hamad received a raise of $0.50 per hour.

52.     On October 24, 2023, Hillier fired Hamad, 18 days after Hamad reported he forgot to inspect his trailer.

53.     Hillier claimed that Hamad's failure to inspect his trailer on October 6, 2023, was his final strike.

54.     Hillier waited over two weeks to fire Hamad after the October 6 incident.

55.     Hamad received a raise in between the time of the October 6, 2023 incident and the October 24, 2023 termination.

56.     Scott Hillier was an employee and agent of Defendant Amazon.com, Inc., acting at all material times within the scope of his employment and agency.

## COUNT I

### RELIGIOUS DISCRIMINATION
### VIOLATION OF THE IOWA CIVIL RIGHTS ACT

57.     Plaintiff repleads paragraphs 1 through 56 as if fully set forth herein.

58.     Hamad is a devout Muslim.

59.     Defendant discriminated against Hamad as a result of his religion and religious beliefs.

60.     Defendant treated Hamad less favorably and more harshly than his similarly situated and non-Muslim colleagues.

61.     Hillier berated Hamad on three different occasions. Defendant did not treat Hamad's non-Muslim colleagues in such a way.

62.     Hamad was also denied appropriate training and set him up for failure. Defendant did not treat Hamad's non-Muslim colleagues in such a way.

63.     Defendant's suddenly harsh treatment of Hamad once he started working at Defendant's Bondurant location was motivated, in whole or in part, by religious discrimination.

64.     As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish;

humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of the Iowa Civil Rights Act.

## COUNT II

### RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE VIOLATION OF THE IOWA CIVIL RIGHTS ACT

65.     Plaintiff repleads paragraphs 1 through 64 as if fully set forth herein.

66.     For devout Muslims like Hamad, daily ritual prayers (salat) and weekly trips to the mosque on Fridays for Salat al-Jumu'ah, are important and integral religious practices.

67.     On multiple occasions, Hamad requested a religious accommodation from Defendant in order to engage in daily prayer (salat). Salat requires about ten minutes each day.

68.     On multiple occasions, Hamad requested a religious accommodation from Defendant in order to attend Friday prayer services (Jumu'ah). The Qur'an requires all adult male Muslims to participate in Salat al-Jumu'ah.

69.     On multiple occasions, Defendant refused to give Hamad a straight answer about whether it would accommodate his religious practices. Each time he attempted to discuss his need for an accommodation with Defendant he was provided with a different answer and told to contact a different person or department or fill out a different form.

70.     Defendant has a legal duty to provide a straightforward process for employees to make requests for religious accommodations. Plaintiff contends Defendant failed or refused to create such a process.

E-FILED 2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

71.    Defendant's failure or refusal to provide a straightforward process for employees to make requests for religious accommodations frustrates the efforts of employees who need such an accommodation. Whether Defendant's failure or refusal is intentional or due to simple negligence is unclear at this time.

72.    Defendant ultimately refused to honor Hamad's requests for a religious accommodation. At times he was not allowed to take a short ten-minute break for salat. He was required to use his leave if he wanted to attend Salat al-Jumu'ah on Fridays.

73.    Hamad's repeated requests for a religious accommodation were reasonable. Upon information and belief, Defendant has any number of employees who do not work on Fridays, who are able to, and would perhaps even prefer to do so. Employees take short breaks for all manner of reasons. There is no reason Defendant would be unreasonably burdened by allowing Hamad a short ten-minute break each day or by finding someone else to work on Fridays.

74.    Defendant's denial of Hamad's request for a religious accommodation violated the Iowa Civil Rights Act.

75.    As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of the Iowa Civil Rights Act.

**COUNT III**

8

## RETALIATION
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT

76.    Plaintiff repleads paragraphs 1 through 75 as if fully set forth herein.

77.    Hamad worked for Defendant for more than 3 years at its Grimes location before being transferred to its Bondurant location. His first day working at that location was on April 16, 2023.

78.    Hamad had been a model employee while working at the Grimes location. He was never written up or disciplined. He did not work on Fridays and his requests for short breaks for salat were honored.

79.    When Hamad began working at the Bondurant location, he almost immediately asked for a religious accommodation.

80.    Scott Hillier ("Hillier"), Hamad's supervisor, was angered by Hamad's request for a religious accommodation. Each time Hamad went to pray, Hillier was visibly annoyed and upset.

81.    Even when Hamad had finally convinced Defendant to grant him a religious accommodation, Hillier worked behind the scenes to block the accommodation.

82.    Hillier also began writing up and disciplining Hamad. He had been a model employee prior to his transfer. Suddenly in the eyes of Hillier and Defendant, Hamad could do nothing right.

83.    As Hamad continued to pursue a religious accommodation from Defendant, Hillier and Defendant's campaign of retaliation escalated.

84.    Defendant denied and/or delayed important training that Hamad needed, particularly given the increased scrutiny he was being subjected to by Hillier.

85.    Hillier wrote Hamad up for infractions that either never happened or that non-Muslim employees engaged in and were not written up for.

86.    Defendant terminated Hamad's employment on October 24, 2023. Hillier told Hamad it was for the "final strike" he had received for forgetting to inspect his trailer on October 6, 2023.

87.    Defendant's other drivers, who are not Muslim and have not requested religious accommodations, have forgotten to inspect their trailers and were not disciplined and did not have their employment terminated.

88.    Hamad's work performance was at all times satisfactory.

89.    In the interim between October 6, 2023 and October 24, 2023, Hamad received a raise for his work performance.

90.    Defendant's treatment of Hamad, as it harassed, berated, disciplined, and ultimately terminated him, was motivated by Hamad's religion, religious beliefs, and request(s) for a religious accommodation and constituted illegal retaliation under the Iowa Civil Rights Act.

91.    As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of the Iowa Civil Rights Act.

## COUNT IV

### DISCRIMINATION ON THE BASIS OF RELIGION
### VIOLATION OF TITLE VII

92.    Plaintiff repleads paragraphs 1 through 91 as if fully set forth herein.

E-FILLED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

93.    Hamad is a devout Muslim.

94.    Defendant discriminated against Hamad as a result of his religion and religious beliefs.

95.    Defendant treated Hamad less favorably and more harshly than his similarly situated and non-Muslim colleagues.

96.    Hillier berated Hamad on three different occasions. Defendant did not treat Hamad's non-Muslim colleagues in such a way.

97.    Hamad was also denied appropriate training and set him up for failure. Defendant did not treat Hamad's non-Muslim colleagues in such a way.

98.    Defendant's suddenly harsh treatment of Hamad once he started working at Defendant's Bondurant location was motivated, in whole or in part, by religious discrimination.

99.    Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

100.    As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, punitive damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of Title VII.

## COUNT V

## RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE
## VIOLATION OF TITLE VII

E-FILED 2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

101.    Plaintiff repleads paragraphs 1 through 99 as if fully set forth herein.

102.    For devout Muslims like Hamad, daily ritual prayers (salat) and weekly trips to the mosque on Fridays for Salat al-Jumu'ah, are important and integral religious practices.

103.    On multiple occasions, Hamad requested a religious accommodation from Defendant in order to engage in daily prayer (salat). Salat requires about ten minutes each day.

104.    On multiple occasions, Hamad requested a religious accommodation from Defendant in order to attend Friday prayer services (Jumu'ah). The Qur'an requires all adult male Muslims to participate in Salat al-Jumu'ah.

105.    On multiple occasions, Defendant refused to give Hamad a straight answer about whether it would accommodate his religious practices. Each time he attempted to discuss his need for an accommodation with Defendant he was provided with a different answer and told to contact a different person or department or fill out a different form.

106.    Defendant has a legal duty to provide a straightforward process for employees to make requests for religious accommodations. Plaintiff contends Defendant failed or refused to create such a process.

107.    Defendant's failure or refusal to provide a straightforward process for employees to make requests for religious accommodations frustrates the efforts of employees who need such an accommodation. Whether Defendant's failure or refusal is intentional or due to simple negligence is unclear at this time.

108.    Defendant ultimately refused to honor Hamad's requests for a religious accommodation. At times he was not allowed to take a short ten-minute break for salat. He was required to use his leave if he wanted to attend Salat al-Jumu'ah on Fridays.

109.    Hamad's repeated requests for a reasonable religious accommodation were reasonable. Upon information and belief, Defendant has any number of employees who do not

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

work on Fridays, who are able to and would perhaps even prefer to do so. Employees take short breaks for all manner of reasons. There is no reason Defendant would be unreasonably burdened by allowing Hamad a short ten-minute break each day or asking another employee to work on Fridays.

110.    Defendant's denial of Hamad's request for a religious accommodation violated Title VII.

111.    Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

112.    As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, punitive damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of Title VII.

## COUNT VI

### RETALIATION
### VIOLATION OF TITLE VII

113.    Plaintiff repleads paragraphs 1 through 112 as if fully set forth herein.

114.    Hamad worked for Defendant for more than 3 years at its Grimes location before being transferred to its Bondurant location. His first day working at that location was on April 16, 2023.

115.    Hamad had been a model employee while working at the Grimes location. He was never written up or disciplined. He did not work on Fridays and his requests for short breaks for salat were honored.

116.    When Hamad began working at the Bondurant location, he almost immediately asked for a religious accommodation.

117.    Scott Hillier ("Hillier"), Hamad's supervisor, was angered by Hamad's request for a religious accommodation. Each time Hamad went to pray, Hillier was visibly annoyed and upset.

118.    Even when Hamad had finally convinced Defendant to grant him a religious accommodation, Hillier worked behind the scenes to block the accommodation.

119.    Hillier also began writing up and disciplining Hamad. He had been a model employee prior to his transfer. Suddenly in the eyes of Hillier and Defendant, Hamad could do nothing right.

120.    As Hamad continued to pursue a religious accommodation from Defendant, Hillier and Defendant's campaign of retaliation escalated.

121.    Defendant denied and/or delayed important training that Hamad needed, particularly given the increased scrutiny he was being subjected to by Hillier.

122.    Hillier wrote Hamad up for infractions that either never happened or that non-Muslim employees engaged in and were not written up for.

123.    Defendant terminated Hamad's employment on October 24, 2023. Hillier told Hamad it was for the "final strike" he had received for forgetting to inspect his trailer on October 6, 2023.

124.    Defendant's other drivers, who are not Muslim and have not requested religious accommodations, have forgotten to inspect their trailers and were not disciplined and did not have their employment terminated.

14

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

125.    Hamad's work performance was at all times satisfactory.

126.    In the interim between October 6, 2023 and October 24, 2023, Hamad received a raise for his work performance.

127.    Defendant's treatment of Hamad, as it harassed, berated, disciplined, and ultimately terminated him, was motivated by Hamad's religion, religious beliefs, and request(s) for a religious accommodation and constituted illegal retaliation under Title VII.

128.    Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

129.    As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, punitive damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of Title VII.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.

15

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

_/s/ Thomas J. Freeman_
FIEDLER LAW FIRM, P.L.C.
Amy Beck AT0013022
amy@employmentlawiowa.com
Thomas J. Freeman AT0016040
tom@employmentlawnebraska.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone: (515) 254-1999
Fax: (515) 254-9923
ATTORNEYS FOR PLAINTIFF

IN THE IOWA DISTRICT COURT IN AND FOR POLK COUNTY

HAMAD HAMAD,

       Plaintiff,   Court File No.: 05771 LACL161449

  vs.

AMAZON.COM, INC.,

       Defendant.

**DEFENDANT'S NOTICE TO PLAINTIFF OF FILING NOTICE OF REMOVAL**

   Pursuant to 28 U.S.C. § 1446(d), this constitutes written notice that on this day, Defendant Amazon.com Services LLC[1] filed the attached Notice of Removal in the United States District Court for the Southern District of Iowa, Central Division, with a copy to the Iowa District Court for Polk County, thereby removing this matter from the Iowa District Court for Polk County, captioned *Hamad Hamad v. Amazon.com, Inc.*, to the United States District Court for the Southern District of Iowa.

Dated: March 17, 2025

          */s/ Emily A. McNee*
          Emily A. McNee, Bar No. AT0014350
          emcnee@littler.com
          LITTLER MENDELSON, P.C.
          1300 IDS Center
          80 South 8th Street
          Minneapolis, Minnesota 55402.2136
          Telephone: 612.630.1000
          Facsimile: 612.630.9626

          Attorneys for Defendant AMAZON.COM, INC.

---

[1] Misidentified in the Complaint as "Amazon.com, Inc."

Proof of Service

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on March 17, 2025 by:

☐ Hand Delivered          ☒ United States mail
☐ Federal Express         ☒ Other (CM/ECF)

Signature: /s/ *Emily A. McNee*

4927-2564-4576 / 114766.1257

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

HAMAD HAMAD,

Plaintiff,

v.

AMAZON.COM, INC.,

Defendant.

Court File No.

**NOTICE OF REMOVAL**

TO:   THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION

Pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441 and 1446, Defendant Amazon.com Services LLC ("Defendant")[1] hereby gives notice of removal of the above-captioned action currently pending in the Polk County District Court, State of Iowa, to the United States District Court for the Southern District of Iowa.  In support of its Notice of Removal, Defendant states as follows:

1.     On or about January 27, 2025, Plaintiff Hamad Hamad ("Plaintiff"), commenced a civil action against Defendant in the Polk County District Court in the State of Iowa, by service pursuant to Iowa Rule of Civil Procedure 1.301.  A true and correct copy of the Summons and Petition is attached as Exhibit A.

2.     Plaintiff claims religious discrimination, failure to accommodate, and retaliation in violation of the Iowa Civil Rights Act and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.  *See* Ex. A, Petition.

3.     ***Federal Question Jurisdiction Basis for Removal:***  This Court has subject matter jurisdiction based upon federal question jurisdiction because Plaintiff's Petition alleges claims for

---

[1] Plaintiff misidentifies his employer as "Amazon.com, Inc." The correct entity is Amazon.com Services LLC.

violation of Title VII, making this a "civil action[] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

4.    ***Supplemental Jurisdiction:***    This Court also has supplemental jurisdiction over Plaintiff's identical claims arising under state law. Because these claims rest on the exact same facts and occurrences as Plaintiff's Title VII claims, they are thus "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" between the parties.  28 U.S.C. § 1367(a).

5.    ***Diversity Jurisdiction Basis for Removal:***    This case is also a civil action over which the Court has original jurisdiction under 28 U.S.C. § 1332 and is one that Defendant may remove to the Court pursuant to 28 U.S.C. §§ 1441 and 1446, in that Plaintiff in this action is diverse in citizenship from Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

6.    ***Citizenship of Parties:***    Plaintiff is a resident of the State of Iowa. *See* Exhibit A, Petition ¶ 2. For diversity purposes, an individual is a citizen of the state in which he or she is domiciled with the intent to remain. *See Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1085 (8th Cir. 2017). To be domiciled in a state, a person must reside there and intend to remain indefinitely. *See Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). A person may only have one domicile and may be a citizen of only one state for diversity jurisdiction purposes. *See Williamson v. Osenton*, 232 U.S. 619, 625 (1914). To be domiciled in a state, a person must reside there and intend to remain indefinitely. *See Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). A person may only have one domicile and may be a citizen of only one state for diversity jurisdiction purposes. *See Williamson v. Osenton*, 232 U.S. 619, 625 (1914). Upon information and belief, Plaintiff was a citizen and resident of the State of Iowa at the time of the commencement of this

action and is now a citizen and resident of the State of Iowa.  (*See* Exhibit A at ¶ 2.) Upon information and belief, Plaintiff continues to reside in Polk County and intends to continue to make Iowa his primary residence for the indefinite future.  Therefore, Plaintiff is a citizen of Iowa for purposes of 28 U.S.C. § 1332.

7.    Plaintiff's employer is misidentified in the Petition as Defendant "Amazon.com, Inc." Nevertheless, Amazon.com, Inc. is an existing corporation formed under the laws of the State of Delaware, with its principal place of business in the State of Washington.  It is therefore a citizen of Delaware and Washington. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").

8.    Amazon.com Services LLC, the correctly named Defendant, is a limited liability company, meaning its citizenship is that of its members. *See GMAC Com. Credit LLC v. Dillard Dep't Stores, Inc*., 357 F.3d 827, 829 (8th Cir. 2004). Amazon.com Services LLC's sole member is Amazon.com Sales, Inc.

9.    Amazon.com Sales Inc. is a corporation incorporated in Delaware, with its principal place of business in Washington. Accordingly, Amazon.com Services LLC, through the citizenship of its member, is a citizen of Delaware and Washington.

10.    Plaintiff is, therefore, diverse in citizenship from Defendant, whether correctly or incorrectly named, so as to vest removal jurisdiction in this Court.

11.    ***Amount in Controversy:***  This is a civil action wherein the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. Plaintiff expressly seeks recovery of lost wages, mental and emotional distress, future earnings, punitive damages, and attorney fees. *See* Ex. A, Petition ¶¶ 64, 75, 91, 100, 112, 129, and "Wherefore" paragraphs.

12.    For the purposes of the amount in controversy, Plaintiff's lost wages are calculated from the date of termination through trial. *See Salazar v. Tyson Foods, Inc.*, 985 F. Supp. 2d 996, 1000 (S.D. Iowa 2013) (calculating potential lost wages through trial). Plaintiff alleges his employment was terminated on October 24, 2023. *See* Ex. A, Petition ¶ 55. Plaintiff earned approximately $2,625.80/month at the time his employment was terminated, making his lost wages through the time he filed his Petition approximately $39,387.[2] The average time from initial filing through resolution at trial in this Circuit is 28.8 months,[3] making Plaintiff's potential lost wages from the date he filed his Petition through resolution at trial approximately $75,600.[4] The amount in controversy from Plaintiff's potential lost wages are thus $114,987.

13.    Considering Plaintiff's monetary claims combined with his clear statement that he is seeking recovery of mental and emotional distress, punitive damages, and attorney fees, this is the type of case wherein the damages sought may reasonably exceed $75,000, such that Defendant may properly remove this action notwithstanding Plaintiff's failure to precisely state an amount of damages exceeding the requisite amount in controversy. *See Berg v. INTL FC Stone, Inc.*, No. 418CV00465RGEHCA, 2019 WL 13301269, at *3 (S.D. Iowa Feb. 6, 2019) (emotional distress); *Allison v. Sec. Ben. Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992) (punitive damages); *Crawford v. F. Hoffman La Roche*, 267 F.3d 760, 766 (8th Cir. 2001) (citing *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)) (attorney's fees). Although Defendant denies the validity and merit of Plaintiff's claims and denies that he is entitled to any relief sought, his claim for

---

[2] $2,625.80 x 15 months.

[3] There is no specific data available for this District. *See* United States Courts Table C-5 ending September 30, 2024, available at: https://www.uscourts.gov/sites/default/files/2024-12/jb_c5_0930.2024.pdf

[4] $2,625.80 x 28.8 months.

damages in the aggregate amount to a claim for over $75,000 and thus, exceed the requisite amount in controversy and Defendant may remove this action. *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002) ("The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000.").

14.     ***Timing of Removal:***  This Notice of Removal is filed within thirty (30) days of Defendant's receipt of the original Petition and thus is timely under 28 U.S.C. § 1446(b).

15.     ***Venue is Proper:*** Venue is proper in this Court pursuant to 28 U.S.C. §§ 95(b)(1), 1391, and 1441, because it is the federal judicial district embracing the original court of filing (i.e., Polk County District Court), as well as where a substantial part of the alleged events giving rise to Plaintiff's claims are alleged to have occurred and because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

16.     Simultaneous with the filing of this Notice of Removal, Defendant has notified the Polk County District Court in the State of Iowa of removal of this action.

17.     Pursuant to Local Rule 81(a)(1), and 28 U.S.C. § 1446, as of the date of filing this Notice of Removal, no other pleadings or orders other than the Petition attached in Exhibit A have been filed in the State Court Action.

18.     Pursuant to Local Rule 81(a)(2), as of the date of filing this Notice of Removal, the only matters that are pending in the Iowa District Court for Polk County that require resolution are the issues raised in Plaintiff's Petition, which as of the time of filing this Notice of Removal have not yet been answered.

19.     True and correct copies of the Notice of Removal (with accompanying Exhibits) and the Notice of Filing of Notice of Removal directed to State Court will be served upon

Plaintiff's counsel and filed with the Court Administrator of the Polk County District Court in the State of Iowa on this date, in accordance with the provisions of 28 U.S.C. § 1446(d).

20.    Attorney Emily McNee represents Defendant. Attorneys Thomas J. Freeman and Amy Beck have appeared in this case in the State Court Action for Plaintiff and their contact information as required under Local Rule 81(a)(3) is:

Emily A. McNee, Bar No. AT0014350
emcnee@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center
80 S. 8th Street
Minneapolis, MN 55402.2136
Telephone:    612.630.1000
Facsimile:    612.630.9626

Thomas J. Freeman, Bar No. AT0016040
tom@employmentlawiowa.com
Amy Beck, Bar No. AT0013022
amy@employmentlawiowa.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone:    515.254.1999
Facsimile:    515.254.9923

By removing this action, Defendant does not waive any defenses, objections, or motions available to it under state or federal law.

WHEREFORE, Defendant respectfully requests that this action, now pending in the District Court for the County of Polk, Iowa, be removed to the United States District Court for the Southern District of Iowa.

Dated:  March 17, 2025

/s/ Emily A. McNee
Emily A. McNee, Bar No. AT0014350
emcnee@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402.2136
Telephone:    612.630.1000
Facsimile:    612.630.9626

Attorneys for Defendant AMAZON.COM, INC.

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on March 17, 2025 by:

☐ Hand Delivered         X United States mail

☐ Federal Express        X Other (CM/ECF)

Signature: /s/ *Emil A. McNee*

EXHIBIT A

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| HAMAD HAMAD, | Case No. |
| Plaintiff, | |
| vs. | |
| AMAZON.COM, INC., | **PETITION AND JURY DEMAND** |
| Defendant. | |

**COMES NOW** Plaintiff Hamad Salih Ali Hamad and for his cause of action states the following:

### INTRODUCTION

1. This is a civil action seeking damages for Defendant's illegal religious discrimination and retaliation in violation of the Iowa Civil Rights Act ("ICRA") and Title VII of the Civil Rights Act of 1964 ("Title VII").

2. Plaintiff Hamad Hamad is a resident of Polk County, Iowa.

3. Defendant Amazon.com, Inc. is a foreign corporation incorporated or organized in Delaware with their principal place of business in Washington.

4. The acts of which Plaintiff complains occurred in Polk County, Iowa.

### PROCEDURAL REQUIREMENTS

5. On February 23, 2024, within 300 days of the acts of which he complains, Hamad filed charges of employment discrimination with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission.

6. On October 30, 2024, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a right to sue letter with respect to Hamad's charges of discrimination.

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

## JURISDICTIONAL REQUIREMENTS

7.     This Court has personal jurisdiction over Defendant, which maintains a facility employs employees, and regularly conducts business in Polk County, Iowa.

8.     This Court has subject matter jurisdiction over the claims alleged in this Petition.

9.     Venue is proper in this Court, as the acts of which Plaintiff complains occurred in Polk County, Iowa.

## FACTUAL BACKGROUND

10.     Plaintiff Hamad Hamad ("Hamad") came to the United States as a refugee from Sudan.

11.     Hamad is black.

12.     Hamad is also a devout Muslim.

13.     Daily ritual prayers, called salat, are an important part of the Islamic religion.

14.     On Fridays, Muslim men are required to engage in communal prayer called Salat al-Jumu'ah.

15.     Salat and Salat al-Jumu'ah are important religious practices for male Muslims and integral to their understanding of their religious obligations.

16.     In March 2020, Defendant hired Hamad as a Sortation Associate at its location in Grimes, Iowa.

17.     While working at Defendant's Grimes location, Hamad went to mosque on Fridays (Salat al-Jumu'ah) and engaged in daily prayer (salat) without issue.

18.     On April 13, 2023, Hamad accepted an offer from Defendant to transfer to the Bondurant, Iowa location and become a transportation associate.

19.     Hamad started his new position on April 16, 2023.

20.    Team Manager Scott Hillier was Hamad's new supervisor at the Bondurant location.

21.    Hamad was trained as a Hostler driver from May 1-4, 2023.

22.    Defendant scheduled Hamad to work each Friday at the Bondurant location.

### HAMAD'S FIRST REQUEST FOR A RELIGIOUS ACCOMMODATION

23.    Hamad immediately asked Hillier to switch his Friday shifts to another day during the week to accommodate his trips to the mosque for Salat al-Jumu'ah.

24.    Hillier refused to switch Hamad's shifts and instructed Hamad to speak with Human Resources.

### HAMAD'S SECOND REQUEST FOR A RELIGIOUS ACCOMMODATION

25.    In May of 2023, Hamad submitted a request to Human Resources to change his schedule so he would not be scheduled to work on Fridays, so he could attend Salat al-Jumu'ah.

26.    Human Resources approved Hamad's request for a schedule change almost immediately.

27.    Hillier became angry, refused to honor Human Resources' decision, and demanded Hamad submit a second request to Human Resources for a schedule change.

### HAMAD'S THIRD REQUEST FOR A RELIGIOUS ACCOMMODATION

28.    On June 14, 2023, Hamad submitted a request to Human Resources on "My HR Live Support."

29.    This time, Human Resources forced Hamad to wait two weeks in limbo, ultimately denying his request for a schedule change and claiming the request contradicted company policy.

30.    The recap of this request stated that the specialist reviewed Hamad's request, but he is "not getting that option." Defendant told Hamad to contact Local Human Resources and fill out a form for any further assistance.

E-FILED 2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

31.     Hamad began using his Paid Time Off ("PTO") and Vacation Time to attend Salat al-Jumu'ah on Fridays because his requests to various human resource offices were denied.

32.     Hillier approved Hamad's vacation time and Human Resources approved his PTO, which Hamad took every Friday.

33.     On June 22, 2023, while at a different worksite, Hamad noticed an operating light in his trailer cab was red.

34.     The worksite manager told Hamad the mistake was minor and instructed Hamad to return to the Bondurant location to receive additional training on properly connecting the trailer and cab.

35.     Defendant routinely retrains its drivers when incidents like this occur.

36.     On June 27, 2023, five days later, Hamad was given his first written warning from Hillier instead of receiving retraining.

37.     The written warning was the first one Hamad had received while employed with Defendant.

38.     Hamad never had any performance-related issues prior to being supervised by Hillier and requesting an accommodation for his religious beliefs.

39.     Hamad was not retrained until weeks later on July 16-18, 2023.

**HAMAD'S FOURTH REQUEST FOR A RELIGIOUS ACCOMMODATION**

40.     On June 29, 2023, Hamad submitted another request to Local Human Resources, asking for an accommodation that would allow him to attend mosque on Fridays.

41.     Local Human Resources stated that this request was outside of their scope.

42.     Local Human Resources instructed Hamad to go through "Transportation Operations Management Human Resources and Centralized Timekeeping" because they handle

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

"religious based schedule change requests." Hamad's description contained only, "religious reason prayer in mosque," which was deemed an insufficient description by Defendant.

## HAMAD'S FIFTH REQUEST FOR A RELIGIOUS ACCOMMODATION

43.     On July 20, 2023, Hamad submitted another request for accommodations to the "proper" human resources.

44.     This request was deemed "improper" and denied by Transportation Operations Management Human Resources and Central Timekeeping, allegedly due to lack of supporting documentation.

45.     Defendant provided no further information to Hamad about the type(s) of documentation it required for such a request.

46.     On August 29, 2023, Hillier issued Hamad a "Final Written Warning," claiming Hamad opened and entered a trailer in the yard that was not docked on August 3.

47.     A "Final Written Warning" serves as a final warning prior to termination. If an employee commits an infraction within 90 days of the warning, they will be terminated.

48.     Defendant did not explain to Hamad why the warning for a "severe safety infraction" was given twenty-six days after the date of the alleged infraction.

49.     On October 6, 2023, Hamad self-reported that he forgot to inspect his trailer.

50.     Hillier reminded Hamad of the rules pertaining to trailer inspections, but he chose not to discipline Hamad.

51.     On October 15, 2023, Hamad received a raise of $0.50 per hour.

52.     On October 24, 2023, Hillier fired Hamad, 18 days after Hamad reported he forgot to inspect his trailer.

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

53.    Hillier claimed that Hamad's failure to inspect his trailer on October 6, 2023, was his final strike.

54.    Hillier waited over two weeks to fire Hamad after the October 6 incident.

55.    Hamad received a raise in between the time of the October 6, 2023 incident and the October 24, 2023 termination.

56.    Scott Hillier was an employee and agent of Defendant Amazon.com, Inc., acting at all material times within the scope of his employment and agency.

## COUNT I

### RELIGIOUS DISCRIMINATION
### VIOLATION OF THE IOWA CIVIL RIGHTS ACT

57.    Plaintiff repleads paragraphs 1 through 56 as if fully set forth herein.

58.    Hamad is a devout Muslim.

59.    Defendant discriminated against Hamad as a result of his religion and religious beliefs.

60.    Defendant treated Hamad less favorably and more harshly than his similarly situated and non-Muslim colleagues.

61.    Hillier berated Hamad on three different occasions. Defendant did not treat Hamad's non-Muslim colleagues in such a way.

62.    Hamad was also denied appropriate training and set him up for failure. Defendant did not treat Hamad's non-Muslim colleagues in such a way.

63.    Defendant's suddenly harsh treatment of Hamad once he started working at Defendant's Bondurant location was motivated, in whole or in part, by religious discrimination.

64.    As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish;

humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of the Iowa Civil Rights Act.

## COUNT II

### RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE VIOLATION OF THE IOWA CIVIL RIGHTS ACT

65.     Plaintiff repleads paragraphs 1 through 64 as if fully set forth herein.

66.     For devout Muslims like Hamad, daily ritual prayers (salat) and weekly trips to the mosque on Fridays for Salat al-Jumu'ah, are important and integral religious practices.

67.     On multiple occasions, Hamad requested a religious accommodation from Defendant in order to engage in daily prayer (salat). Salat requires about ten minutes each day.

68.     On multiple occasions, Hamad requested a religious accommodation from Defendant in order to attend Friday prayer services (Jumu'ah). The Qur'an requires all adult male Muslims to participate in Salat al-Jumu'ah.

69.     On multiple occasions, Defendant refused to give Hamad a straight answer about whether it would accommodate his religious practices. Each time he attempted to discuss his need for an accommodation with Defendant he was provided with a different answer and told to contact a different person or department or fill out a different form.

70.     Defendant has a legal duty to provide a straightforward process for employees to make requests for religious accommodations. Plaintiff contends Defendant failed or refused to create such a process.

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

71.     Defendant's failure or refusal to provide a straightforward process for employees to make requests for religious accommodations frustrates the efforts of employees who need such an accommodation. Whether Defendant's failure or refusal is intentional or due to simple negligence is unclear at this time.

72.     Defendant ultimately refused to honor Hamad's requests for a religious accommodation. At times he was not allowed to take a short ten-minute break for salat. He was required to use his leave if he wanted to attend Salat al-Jumu'ah on Fridays.

73.     Hamad's repeated requests for a religious accommodation were reasonable. Upon information and belief, Defendant has any number of employees who do not work on Fridays, who are able to, and would perhaps even prefer to do so. Employees take short breaks for all manner of reasons. There is no reason Defendant would be unreasonably burdened by allowing Hamad a short ten-minute break each day or by finding someone else to work on Fridays.

74.     Defendant's denial of Hamad's request for a religious accommodation violated the Iowa Civil Rights Act.

75.     As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of the Iowa Civil Rights Act.

**COUNT III**

8

## RETALIATION
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT

76.    Plaintiff repleads paragraphs 1 through 75 as if fully set forth herein.

77.    Hamad worked for Defendant for more than 3 years at its Grimes location before being transferred to its Bondurant location. His first day working at that location was on April 16, 2023.

78.    Hamad had been a model employee while working at the Grimes location. He was never written up or disciplined. He did not work on Fridays and his requests for short breaks for salat were honored.

79.    When Hamad began working at the Bondurant location, he almost immediately asked for a religious accommodation.

80.    Scott Hillier ("Hillier"), Hamad's supervisor, was angered by Hamad's request for a religious accommodation. Each time Hamad went to pray, Hillier was visibly annoyed and upset.

81.    Even when Hamad had finally convinced Defendant to grant him a religious accommodation, Hillier worked behind the scenes to block the accommodation.

82.    Hillier also began writing up and disciplining Hamad. He had been a model employee prior to his transfer. Suddenly in the eyes of Hillier and Defendant, Hamad could do nothing right.

83.    As Hamad continued to pursue a religious accommodation from Defendant, Hillier and Defendant's campaign of retaliation escalated.

84.    Defendant denied and/or delayed important training that Hamad needed, particularly given the increased scrutiny he was being subjected to by Hillier.

85.    Hillier wrote Hamad up for infractions that either never happened or that non-Muslim employees engaged in and were not written up for.

86.    Defendant terminated Hamad's employment on October 24, 2023. Hillier told Hamad it was for the "final strike" he had received for forgetting to inspect his trailer on October 6, 2023.

87.    Defendant's other drivers, who are not Muslim and have not requested religious accommodations, have forgotten to inspect their trailers and were not disciplined and did not have their employment terminated.

88.    Hamad's work performance was at all times satisfactory.

89.    In the interim between October 6, 2023 and October 24, 2023, Hamad received a raise for his work performance.

90.    Defendant's treatment of Hamad, as it harassed, berated, disciplined, and ultimately terminated him, was motivated by Hamad's religion, religious beliefs, and request(s) for a religious accommodation and constituted illegal retaliation under the Iowa Civil Rights Act.

91.    As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of the Iowa Civil Rights Act.

## COUNT IV

### DISCRIMINATION ON THE BASIS OF RELIGION
### VIOLATION OF TITLE VII

92.    Plaintiff repleads paragraphs 1 through 91 as if fully set forth herein.

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

93.     Hamad is a devout Muslim.

94.     Defendant discriminated against Hamad as a result of his religion and religious beliefs.

95.     Defendant treated Hamad less favorably and more harshly than his similarly situated and non-Muslim colleagues.

96.     Hillier berated Hamad on three different occasions. Defendant did not treat Hamad's non-Muslim colleagues in such a way.

97.     Hamad was also denied appropriate training and set him up for failure. Defendant did not treat Hamad's non-Muslim colleagues in such a way.

98.     Defendant's suddenly harsh treatment of Hamad once he started working at Defendant's Bondurant location was motivated, in whole or in part, by religious discrimination.

99.     Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

100.     As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, punitive damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of Title VII.

## COUNT V

## RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE
## VIOLATION OF TITLE VII

11

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

101.    Plaintiff repleads paragraphs 1 through 99 as if fully set forth herein.

102.    For devout Muslims like Hamad, daily ritual prayers (salat) and weekly trips to the mosque on Fridays for Salat al-Jumu'ah, are important and integral religious practices.

103.    On multiple occasions, Hamad requested a religious accommodation from Defendant in order to engage in daily prayer (salat). Salat requires about ten minutes each day.

104.    On multiple occasions, Hamad requested a religious accommodation from Defendant in order to attend Friday prayer services (Jumu'ah). The Qur'an requires all adult male Muslims to participate in Salat al-Jumu'ah.

105.    On multiple occasions, Defendant refused to give Hamad a straight answer about whether it would accommodate his religious practices. Each time he attempted to discuss his need for an accommodation with Defendant he was provided with a different answer and told to contact a different person or department or fill out a different form.

106.    Defendant has a legal duty to provide a straightforward process for employees to make requests for religious accommodations. Plaintiff contends Defendant failed or refused to create such a process.

107.    Defendant's failure or refusal to provide a straightforward process for employees to make requests for religious accommodations frustrates the efforts of employees who need such an accommodation. Whether Defendant's failure or refusal is intentional or due to simple negligence is unclear at this time.

108.    Defendant ultimately refused to honor Hamad's requests for a religious accommodation. At times he was not allowed to take a short ten-minute break for salat. He was required to use his leave if he wanted to attend Salat al-Jumu'ah on Fridays.

109.    Hamad's repeated requests for a reasonable religious accommodation were reasonable. Upon information and belief, Defendant has any number of employees who do not

work on Fridays, who are able to and would perhaps even prefer to do so. Employees take short breaks for all manner of reasons. There is no reason Defendant would be unreasonably burdened by allowing Hamad a short ten-minute break each day or asking another employee to work on Fridays.

110.    Defendant's denial of Hamad's request for a religious accommodation violated Title VII.

111.    Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

112.    As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, punitive damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of Title VII.

## COUNT VI

## RETALIATION
## VIOLATION OF TITLE VII

113.    Plaintiff repleads paragraphs 1 through 112 as if fully set forth herein.

114.    Hamad worked for Defendant for more than 3 years at its Grimes location before being transferred to its Bondurant location. His first day working at that location was on April 16, 2023.

13

115.    Hamad had been a model employee while working at the Grimes location. He was never written up or disciplined. He did not work on Fridays and his requests for short breaks for salat were honored.

116.    When Hamad began working at the Bondurant location, he almost immediately asked for a religious accommodation.

117.    Scott Hillier ("Hillier"), Hamad's supervisor, was angered by Hamad's request for a religious accommodation. Each time Hamad went to pray, Hillier was visibly annoyed and upset.

118.    Even when Hamad had finally convinced Defendant to grant him a religious accommodation, Hillier worked behind the scenes to block the accommodation.

119.    Hillier also began writing up and disciplining Hamad. He had been a model employee prior to his transfer. Suddenly in the eyes of Hillier and Defendant, Hamad could do nothing right.

120.    As Hamad continued to pursue a religious accommodation from Defendant, Hillier and Defendant's campaign of retaliation escalated.

121.    Defendant denied and/or delayed important training that Hamad needed, particularly given the increased scrutiny he was being subjected to by Hillier.

122.    Hillier wrote Hamad up for infractions that either never happened or that non-Muslim employees engaged in and were not written up for.

123.    Defendant terminated Hamad's employment on October 24, 2023. Hillier told Hamad it was for the "final strike" he had received for forgetting to inspect his trailer on October 6, 2023.

124.    Defendant's other drivers, who are not Muslim and have not requested religious accommodations, have forgotten to inspect their trailers and were not disciplined and did not have their employment terminated.

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

125.    Hamad's work performance was at all times satisfactory.

126.    In the interim between October 6, 2023 and October 24, 2023, Hamad received a raise for his work performance.

127.    Defendant's treatment of Hamad, as it harassed, berated, disciplined, and ultimately terminated him, was motivated by Hamad's religion, religious beliefs, and request(s) for a religious accommodation and constituted illegal retaliation under Title VII.

128.    Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

129.    As a result of the Defendant's acts and omissions, Hamad has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate him for his injuries and damages, punitive damages, for attorney fees, including litigation expenses, for the costs of this action, for appropriate and equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of Title VII.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.

E-FILED  2025 JAN 27 10:41 AM POLK - CLERK OF DISTRICT COURT

   */s/ Thomas J. Freeman*
FIEDLER LAW FIRM, P.L.C.
Amy Beck AT0013022
amy@employmentlawiowa.com
Thomas J. Freeman AT0016040
tom@employmentlawnebraska.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone: (515) 254-1999
Fax: (515) 254-9923
ATTORNEYS FOR PLAINTIFF